Landon, P. J.
The inspectiorsof election for the eleventh district of Watervliet did, at the close of the election, make and sign two original statements of the result of the election in that district, respecting the votes *22 cast for the office of senator. One of these statements-they delivered to the town clerk and one to the county clerk to be filed. They ought to have delivered one of these original statements to the supervisor of the town, but they failed to do so. Six days thereafter, two of the inspectors made and signed what purported to be a copy of these original statements, but differing from them in that it was stated therein that Henry Bussell received forty-five votes less and Horton Chase forty-five more for the office of senator than was certified and determined by the inspectors and set forth in the two original statements. This change of determination and statement was not within their power or jurisdiction to make, and was wholly invalid as an efficient and legal change of their first determination and statement.' Beside, it was made under such circumstances and upon such representations t<r-the two inspectors as Avere Avholly insufficient to. establish" any error in their original determination and statement, if it had been competent for them to alter it. This paper these two inspectors caused to be delivered to the super; visor of the town. One of the original statements ought to have been delivered to him: A copy of the original statement ought to have been immediately filed in the town clerk’s- office.
The supervisor receiving this paper, in the absence of any evidence exciting his suspicion in regard to its regularity and genuineness, would naturally regard it as the original statement which the law requires to be delivered to him. He presented it to the board of county canvassers, and that body proceeded to take action upon it.
Some question is made as to the proof respecting the determination of that board to receive it as an original and genuine return. The affidavits submitted show that that body had laid it before a committee óf their body charged with making a preliminary statement of the votes cast at the election, and that its statements Avere entered in a tabulated statement prepared- by that committee for the final *23 adoption of the board as their determination of the result of the canvass. No evidence is submitted leading us to doubt that the board of canvassers were in the act of embodying its statements in the canvass about to be declared by them.
Indeed, as that body has only ministerial and not judicial duties to perform, it could not enter upon judicial investigation to ascertain the genuineness of a return which the law required one of that body to return to them. This paper was favored by the presumption of official honesty and regularity. A case was, therefore, presented in which it Avas proper to invoke the aid of the court, to the end that the true nature of this irregular paper might be judicially im^estigated and declared. An application was, therefore, made to the special term, under chapter 460, Laws of 1880, for a mandamus to compel the board of canvassers not to canvass the irregular returns. The affidavits there submitted shoAved the facts above stated, and no attempt Avas made to shoAV that the irregular paper delivered to the supervisors Avas made otherwise than as above stated:
The special term, as Ave think, properly granted a mandamus directing the board of county comTassers not to canvass the returns as stated in this irregular paper. Such an order, ■ we think, Avas regularly granted upon a state of facts Avhich fully justified and required it. The time had come when it was proper for the court to use its judicial functions to correct and direct the board as to the proper return or paper upon which the latter should exercise its ministerial functions. Counsel for the respective parties agree that the order of the special term is defective in not directing Avhat return the board of county canvassers should canvass. Under these circumstances, there can be no doubt that the returns filed in the county clerk’s office should be canvassed by the board. Chapter 460 of the LaAvs of 1880, provides that, in a proceeding like this, the court may compel the board to correct the *24 errors which it has committed. It has committed an error in using the irregular return for any purpose. The order of the special term should be affirmed, with the further direction that the board of county canvassers shall substitute the return filed in the county clerk’s office for irregular returns aforesaid, and use the- same in their further proceedings as the genuine return. The order to be presented to Justice Landon for settlement.
Fish and A. B. Parker, J J., concurred.
Note on Power of Court Over Canvass of Votes.
The board of canvassers had the power, and it was its duty, to ascertain and determine what were the original returns, and whether they had been altered. McCrary on Elections, §§ 82, 554; Matter of Elections, 70 Maine, 560, 567, 568.
In a proceeding by mandamus to compel a board of canvassers to count a vote as returned by the officers of election, when it appears that an alteration has been made in the return of the vote, but the canvassers do not know whether it was made before or after the return was delivered to them by the officers of the election, the circuit court will inquire and determine what the return as delivered actually was, and will compel them to make the count accordingly. State ®. Garesche, 65 Mo. 480.
At common law the duty of canvassers is purely ministerial. The court could by mandamus, compel them to act, but could not direct them how to act. People v. Canvassers, 12 Abb. N. C. 84; People v. Supervisors, 12 Barb. 217, 220 ; Hadley v. Albany, 38 N. Y. 603; Morgan v. Quackenbush, 22 Barb. 72, 77.
When they had acted, nr matter how erroneously, the court could not compel them to, nor could they voluntarily, reconvene and correct an error or wrong, no matter how clear. Morgan v. Quackenbush, 22 Barb. 72, 77 ; Hadley v. Albany, 33 N. Y. 603. They cannot receive anything outside of the original returns themselves People v. Canvassers, 64 How. Pr. 334; Morgan v. Quackenbush, 22 Barb. 72, 77 ; People v. Canvassers, 12 Abb. N. C. 84.
By L. 1880, c. 460, p. 662, the right of courts, in New York, to control canvassers was extended by allowing the courts to compel canvassers to reconvene and declare a truthful result of the returns before them. People v. Canvassers, 64 How. Pr. 201; S. C,, 2 Civ. Pro. R. (Browne) 452; People v. Canvassers, 64 How. Pr, 357; S. C., *25 12 Abb. N. C. 77; People v. Canvassers, 64 How. Pr. 334; 12 Abb. N. C. 95, Id. 103, Id. 84.
The act of 1880, as its title declares, was designed to “ extend,” and not to abridge, the powers of courts. Cases had occurred where, before a mandamus or prohibition could be obtained, the canvassers illegally declared a candidate elected, returned that they had declared a result, and the courts were powerless to correct the grossest wrong. It was to meet such cases, and to provide in general for decent elections and returns thereof, that the election law of 1880 was passed. That law nowhere speaks of or refers to the class of cases where preventive remedies had been granted, but leaves them in full force. It is creative only of new rights, in the class of cases where a result has been illegally declared.
The principal case clearly declares the right of the court, by way of preventive justice, to control apparently contemplated illegal action by the board of canvassers. The general term of the supreme court, composed of Justices Leashed, Boardmah, and Bockes, held at the city hall, in the city of Albany, on November 17, 1876, in the case of People ex rel. Wemple r. Canvassers of Albany County, required the board to canvass a certain return of the vote for sheriff from the fifth ward of the city of Cohoes, or show cause why a peremptory mandamus should not issue requiring them to do so. The court also granted a writ of prohibition restraining them from adjourning, except from day to day, and from canvassing any except the designated return from that particular ward. Upon the suggestion being made that it was unusual for the general term to grant, or to spend its time in the hearing of such orders, the court remarked that courts of justice sat to uphold and enforce the law, and it knew of no better use of its time than to preserve, as far as possible, the purity of elections, and to enforce the law relative thereto. Cases like the principal case and that of the People ex rel. Wemple were left, by the act of 1880,untouched and still available. In fine, a new and speedy remedy was given in a class of cases where none before existed.